UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CR-113-1-F
No. 4:11-CR-113-2-F

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| KEITH EDWARD FRAZIER ) | |
| DEONTAYE TREVON PARRISH, ) | |
| Defendants. ) | |

This matter is before the court on motion of Keith Edward Frazier ("Frazier"), joined by his brother, co-defendant Deontaye Trevon Parrish ("Parrish"), to suppress "all information or other items recovered by investigators as a result of the seizure and search of" Frazier's Apple iPhone, including any information or leads obtained directly or indirectly from that seizure and search. *See* Motion [DE-76] p. 2. Additionally, Frazier individually has filed an Amended Motion to Suppress iPhone Data [DE-97], which seeks suppression of the same description of evidence, but for a different reason, a motion to suppress information and items derived from Frazier's arrest on March 31, 2011, by Washington, North Carolina, police ("WPD") [DE-99], and a motion to suppress information and items derived from Frazier's arrest by Greenville, North Carolina, police ("GPD") [DE-98]. The Government has filed an Omnibus Response [DE-102], supported by affidavits and exhibits.

## I. FAULTY PREMISES

### A. Parrish

Parrish's motion to suppress [DE-79], incorporating [DE-76], is DENIED,[1] because he has suggested no factual or legal basis upon which he might be found to have standing to assert an expectation of privacy with regard to Frazier's cell phone. In fact, Frazier himself seems to have withdrawn the argument he advanced in that initial suppression motion.

### B. Frazier

Affidavits filed by the participating law enforcement officers demonstrate that the factual basis for Frazier's Motion to Suppress [DE-98] is faulty. Specifically, Frazier contends that pretrial discovery reveals he was arrested in "Beaufort, North Carolina, by a Greenville police officer on April 7, 2011," and that such arrest was illegal because the Greenville police officer acted outside his jurisdiction, as defined in N.C. GEN. STAT. § 15A-402(c). *See* Motion [DE-98] at pp. 1-2. GPD Detective Jeffrey Baxter ("Baxter") and WPD Detective Jesse Dickinson ("Dickinson"), state under oath in support of the Government's response, that Det. Dickinson arrested Frazier in Washington, based on his personal knowledge of the outstanding warrant for Frazier's arrest issued by a Pitt County magistrate upon application by Det. Baxter. The details of the arrest, which are relatively lengthy, are set forth in both detectives' affidavits and summarized in the Government's Response [DE-102]. There being no material factual issue, Frazier's Motion to Suppress [DE-98] evidence and information resulting from his April 7, 2011, arrest is DENIED as factually unsupported.

---

[1] Parrish's trial, set for the November 5, 2012, term, has been severed from that of Frazier, which now is scheduled for the October 1, 2012, term of court.

Case 4:11-cr-00113-F   Document 109   Filed 08/27/12   Page 2 of 11

## II. **WASHINGTON TRAFFIC STOP and GREENVILLE iPHONE EXAMINATION**

Frazier's Amended Motion to Suppress iPhone Data [DE-97] and his Motion to Suppress evidence derived from his arrest on an earlier date by WPD [DE-99] arise from the same event, which occurred on March 31, 2011. By way of background, however, Frazier is charged in Counts One and Two of an indictment [DE-13] with federal offenses arising from an armed robbery of the Wal-Mart in Washington, North Carolina, and in Counts Three and Four with the armed bank robbery of a branch of the First State Bank in Greenville, North Carolina, a month later. Frazier is alleged to have had a different accomplice in each robbery.

The first significant event occurred on February 2, 2011, when the Wal-Mart in Washington, North Carolina (in Beaufort County), was robbed by an armed black male. Surveillance video and eyewitness accounts provided a description of the suspect and a possible accomplice, as well as of a black Dodge Magnum in which the robber fled. WPD officers followed up these leads and began to narrow the suspects.

Near the end of that month, on February 21, 2011, WPD Cpl. Jerry Seighman issued a "banishment notification"[2] to Keith Edward Frazier at the Clifton Meadows Apartments, a property owned or managed by the City of Washington Housing Authority

---

[2] Banishment notifications may be issued by a WPD officer if an individual allegedly is involved in "any illegal drug activity or other criminal activity that affects the Housing Authority, or any activity that jeopardizes the peaceful environment of the Housing authority or any activity that is inappropriate for the Housing Authority." *See* Authorization, Exh. B to Affidavit of Jerry Seighman, Exh. 4 to Response [DE-102] (*see also* [DE-103], Notice of Corrected Affidavit). The reason for the February 21, 2011, WHA banishment notification issued to and signed by Frazier ("Alcohol Consumption/False Address in Housing") is not contested herein. *See id.*, Exh. A. The Notification states, *inter alia*, that the recipient "understand[s] that if I am observed on any property of the Housing Authority that I will be subject to being prosecuted for trespassing." *Id.*

3

("WHA"). Cpl. Seighman holds an authorization to act as an agent for the housing authority, and has been engaged in patrolling WHA properties and issuing banishment notices for years.

On March 7, 2011, two armed black males robbed a branch of the First State Bank in Greenville, North Carolina. Eyewitness accounts and interviews with area residents yielded a description of a black Dodge Magnum that officers had associated with Frazier following the Wal-Mart robbery a month before. On the same day as the bank robbery, that vehicle was spotted being operated by a female who stated she had borrowed it from Danisha Selby, whom officers knew as Frazier's girlfriend, and who lived at 145 Clifton Meadows Apartments. *See* Affidavit of WPD Det. Barrett in support of Search Warrant Application, dated April 4, 2011, attached as an unnumbered exhibit to Frazier's Motion to Suppress [DE-76].

### A. March 31, 2011, Traffic Stop and Arrest

Cpl. Seighman avers that before the end of March 2011, he had observed a silver Ford Crown Victoria at Clifton Meadows Apartments "near the building containing apartments 141 through 145." He ran the license tag and discovered the car was registered to an individual named Oswald from neighboring Carteret County who had a lengthy criminal record, including convictions for breaking and entering into a motor vehicle, felony larceny of a motor vehicle, and possession of a firearm by a felon.

On the night of March 31, 2011, Cpl. Seighman again noticed the same silver Crown Vic being driven in the Clifton Meadows Apartment complex, and he chose to investigate with the idea of issuing a banishment notification in light of what he had learned when he had run the tag several days earlier. Cpl. Seighman was able to see that there were at least four people in the car, which sped up when he began following it. Seighman called for back up units, recalling the seriousness of the owner's criminal record and noting the fact that the vehicle

4

accelerated after he had passed it exiting the parking lot. He pulled over the car after he observed it fail to come to a complete stop at a stop sign and noticed that the rear passenger tail light appeared to be broken. Approaching the driver's side, he signaled for the driver to open the window. Immediately, he recognized Keith Edward Frazier to whom he had issued a banishment notification less than a month earlier. He confirmed Frazier's identity by checking his driver's license, then arrested Frazier for trespassing. Frazier was searched incident to his arrest, and the WPD officers seized an Apple iPhone and $288 in cash from his person. Frazier posted bond on the charges arising from the arrest and was released, but the WPD retained the iPhone.

As grounds for his Motion to Suppress [DE-99] arising from the March 31, 2011, arrest, Frazier contends that "there was no apparent reason to stop the vehicle that was being driven by the defendant and included passengers in the vehicle." Motion [DE-99], p. 1. As Frazier acknowledges, a police officer must have "a reasonable and articulable suspicion," *United States v. Sokolow*, 490 U.S. 1, 7 (1968) – that is, "a particularized and objective basis for suspecting the person stopped was engaged in criminal activity" – to stop a vehicle. *Ornelas v. United States*, 516 U.S. 690, 699 (1996). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *United States v. Branch*, 527 F.3d 328, 335 (4th Cir. 2008).

In light of Seighman's Affidavit detailing his observation of two traffic violations, as well as his statement that he previously had identified the vehicle as registered to a felon he intended to ban from WHA properties, there appear to be legal as well as factual justifications for the stop. Further, when Cpl. Seighman immediately recognized Frazier from having issued him

5

a banishment notification within the month, *see* Exh. A to Seighman's Affidavit, Exh. 4 to Response [DE-102], probable cause existed for Frazier's arrest for trespass and the subsequent search of his person. Nevertheless, Frazier will be afforded an opportunity to testify or offer contrary evidence, if he so desires, prior to his scheduled trial date.

B. Examination of Seized iPhone

In support of his Amended Motion to Suppress Data [DE-97], extracted from the Apple iPhone seized incident to his arrest by Cpl. Seighman, Frazier argues that the search warrant issued by a Beaufort County magistrate in Washington, North Carolina, was ineffective to support the forensic search of that device in adjacent Pitt County by GPD forensics examiner, Det. Charles Farrar. According to affidavits submitted in support of the Government's response to Frazier's motions, both GPD Det. Jeffrey Baxter, who was investigating the March 7, 2011, robbery of the First State Bank in Greenville, and WPD detectives investigating the Wal-Mart armed robbery, received information from informants that implicated Frazier in the bank robbery. *See* GPD Det. Brian P. Gillen's Affidavit in Support of Criminal Complaint in this case, [DE-1], dated October 12, 2011.

The GPD and WPD, located in contiguous Pitt and Beaufort Counties, shared information concerning Frazier in the period between late February and April 2011 as their respective investigations progressed. When GPD Det. Baxter learned of Frazier's arrest in Washington on March 31st, he and Det. Gillen drove to the WPD that day, a Thursday, to meet with WPD Det. Barrett. *See* Affidavit of GPD Det. Baxter, Exh. 1 to Response [DE-102], pp 1-2. Det. Barrett advised that Frazier's cell phone had been seized incident to his arrest, and that he was planning to apply for a warrant to search the contents of the phone. *See id.*, p. 2. Det.

6

Baxter advised that GPD's Det. Farrar had the ability to conduct a forensic search of the iPhone, if necessary, but that Det. Farrar required a search warrant to do so. *See id.*

On Monday, April 4, 2011, Det. Barrett drove from Washington to Greenville with Frazier's iPhone (which had been in the custody of the WPD since Frazier's arrest on Thursday) and a search warrant issued by Beaufort County magistrate Sadler at 2:41 p.m. that afternoon. In Greenville, GPD Det. Farrar conducted a forensic search pursuant to the warrant, downloaded data from Frazier's iPhone onto a disc, and returned the phone itself to Det. Barrett. *See id.; see also* Affidavit of Det. Farrar, Exh. 3 to Response [DE-102]. After learning that informants had reported having seen photographs of large amounts of cash, money bags and guns on Frazier's iPhone, GPD Det. Baxter and Det. Gillen asked Det. Farrar on Wednesday, April 6th to examine a particular photograph downloaded from that iPhone depicting "a pile of money on the floor that also contained bank money wraps and paper clips holding the money together," to determine whether he could ascertain when the photograph was taken. Det. Baxter Affidavit, p. 3. Det. Baxter stated in his Affidavit that, having worked as a bank teller in college, he recognized the manner in which bank tellers divide currency in their drawers. *See id.* Det. Farrar examined the photograph's "properties," and reported that the picture had been taken at 2:56 p.m. on March 7, 2011, eleven minutes after the First State Bank robbery in Greenville. *See id.; see also id.,* Exh.3, Det. Farrar Affidavit.

Frazier argues in his Amended Motion to Suppress [DE-97] that Det. Farrar's search of the iPhone and seizure of the data contained therein was in violation of N.C. GEN. STAT. § 7A-273 (4), which limits a North Carolina magistrate's "power . . . to issue search warrants [that are] valid throughout the county." Because the search authorized by the Beaufort County search warrant was executed in Pitt County where GPD's forensic examiner, Det. Farrar,

downloaded or "seized" the data, Frazier contends the search and seizure of the cell phone's contents must be suppressed as illegally obtained under North Carolina law. He cites no authority other than the state statute, does not contend the search or seizure violated his Fourth Amendment rights, and has not argued that the warrant was not supported by probable cause. The Government responds frankly that it has been unable to locate any case law construing the statute Frazier cites for his argument. However, the Government likens the search and seizure to an analysis by the State Bureau of Investigation Laboratory in Wake County of a "green vegetable matter" seized by WPD officers in a Beaufort County drug bust. *See* Response [DE-102], pp. 10-11.

First, as the Government points out, this prosecution is in federal court in the Eastern District of North Carolina, in which both Pitt and Beaufort Counties are located, and is brought for violation of federal statutes. Second, although Frazier does not raise the argument, the Fourth Amendment to the Constitution governs the constitutionality of a search and seizure that produced evidence in an investigation culminating in an arrest resulting in federal charges and sought to be used in a federal prosecution. The standard for such a search and seizure is the existence of probable cause, and Frazier does not contend that the warrant was not supported by probable cause.

The court observes that the Fourth Circuit court of Appeals has held that "officers may retrieve text messages and other information from cell phones and pagers seized incident to an arrest" in order to preserve evidence. *See United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009). However, such a search should be relatively contemporaneous with the arrest and is limited to evidence of the crime for which the arrest was made. *E.g., United States v. Quintana*,

594 F. Supp. 2d 1291, 1301 (M.D. Fla. 2009) (invalidating trooper's search of cell phone upon arresting defendant for driving with a suspended license).

Here, the search of Frazier's iPhone was not one "incident to arrest" in which the arresting officer purported to search the cell phone for evidence of trespassing on WHA property, running a stop sign or having a broken tail light. *Cf. Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia & Ginsburg, JJ., concurring in the judgment) (reasoning that an evidentiary search of an automobile incident to an arrest should be allowed only where it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle"); *see also Chimel v. California*, 395 U.S. 752, 762-63 (1969). Rather, in this case, law enforcement officers wanted to search for evidence of the Greenville bank robbery in light of tips received by informants. They recognized the intrusiveness of the search they sought to perform on Frazier's cell phone, and they took the additional steps to secure a search warrant. *See, e.g., Schlossberg v. Solesbee*, 844 F. Supp.2d 1165 (D. Or. 2012) (invalidating warrantless search of environmental activist's digital camera incident to his arrest while handing out leaflets; warrant is required absent exigent circumstances). The question raised here, therefore, is not whether Det. Farrar conducted an unconstitutional, unreasonable search. Frazier's challenge questions the legality of an extra-jurisdictional extraction of data from a properly seized cell phone[3] pursuant to what appears to be a valid search warrant issued in the county in which the phone was seized and held as evidence in the trespassing charge. By the time the search warrant was obtained for the

---

[3] Beyond challenging the March 31st traffic stop as lacking a factual basis, Frazier has not questioned the WPD's retention of his cell phone seized when he was arrested for trespassing. Again, the court has determined that the record fully supports the legality of the traffic stop from which probable cause quickly developed to arrest Frazier for trespassing. Physical seizure of his cell phone after Frazier was taken into custody was a fruit of that stop and arrest, but the court offers Frazier the opportunity to challenge the evidence of record that has been received concerning the stop.

9

contents of the cell phone, both the WPD and GPD detectives had pieced together shards of information in their respective robbery investigations that suggested Keith Frazier's implication in both.

The court perceives that the warrant was executed on the iPhone itself in Washington, where it had been in WPD custody since Frazier's arrest a few days earlier. The forensic examination of the phone's contents, like that of a vial of blood, for instance, was conducted in a different location from the place of seizure by a different law enforcement agency with specialized training, equipment and experience. Although Frazier has not advanced a viable legal or pragmatic argument in support of his Amended Motion to Suppress Det. Farrar's examination of the iPhone pursuant to the Beaufort County search warrant, the court offers him another opportunity to do so before trial.

### III. SUMMARY

The Motion to Suppress **[DE-76]** is DENIED as to Parrish for lack of standing.

Frazier's Motion to Suppress **[DE-98]** evidence obtained as a result of his arrest by Det. Dickinson in Washington on April 7, 2011, is DENIED as based on a misunderstanding of the evidence of record.

Frazier's Motion to Suppress **[DE-99]** evidence flowing from his arrest in Washington by Cpl. Seighman on March 31, 2011, on grounds that the traffic stop was unsupported by a reasonable and articulable suspicion, and his Amended Motion to Suppress iPhone Data **[DE-97]** are HELD IN ABEYANCE until **September 10, 2012.**

A. Specifically, if Frazier wishes to offer some authority for a legal argument concerning the efficacy of N.C. GEN. STAT. § 7A-273 (4) to require the suppression in this court of Det. Farrar's forensic examination of Frazier's iPhone in Greenville, North Carolina, he shall do

so in a supplemental memorandum filed on or before the close of business on **September 10, 2012**.

B. In that same writing, Frazier shall advise the court whether he wishes to offer evidence or otherwise mount a factual challenge to Cpl. Seighman's Affidavit concerning the particulars of the traffic stop on March 31, 2011. If so, the court will notice and schedule a hearing prior to the **October 1, 2012**, term of court, during which Frazier's trial will take place. *See* Order [DE-108].

C. If Frazier declines to respond in writing as directed in A and B, above, the court will enter an order summarily denying the remaining motions to dismiss, [DE-97] and [DE-99], for the reasons stated herein.

SO ORDERED.

This, the 27th day of August, 2012.

/s/ James C. Fox
JAMES C. FOX
Senior U.S. District Judge

11

Case 4:11-cr-00113-F   Document 109   Filed 08/27/12   Page 11 of 11